BARNES, J.,
for the Court:
¶ 1. Daniel Byers was convicted on two counts of felony child abuse and sentenced to forty years on each count, with the sentences to run concurrently, in the custody of the Mississippi Department of Corrections (MDOC). On appeal, we find no reversible error and affirm his convictions and sentences.
FACTS AND PROCEDURAL HISTORY
¶ 2. Byers lived with his girlfriend, Anna, and her three young daughters. Anna worked night shifts at the Hard Rock Hotel and Casino in Biloxi, Mississippi; so Byers cared for the children in the evening while she worked. On September 4, 2011, Anna’s two-year-old daughter, Tiffany,[1] suffered injuries while in Byers’s care, and Byers took her to Garden Park Medical Center (Garden Park) in Gulfport, Mississippi. Medical examination revealed that Tiffany had suffered a fracture of her right femur, along with severe bruising, abrasions, and lacerations to her neck, face, and stomach. Tiffany was transferred to the University of South Alabama Children’s and Women’s Hospital (USA Hospital) in Mobile, Alabama.
¶ 3. Byers claimed that the injuries occurred when Tiffany’s foot became stuck in the rails of her crib and she fell from the crib to the floor. However, the medical staff suspected child abuse, as these types of injuries to a young child are rare. Furthermore, the staff at USA Hospital noted small tears in Tiffany’s vaginal area and that her hymen was not intact. The hospital staff reported the injuries to State authorities, and the Department of Human Services gained custody of the child until November 2011, when she was released into her mother’s care.
*101 ¶ 4. On April 9, 2012, Byers was indicted on three counts of felony child abuse (Counts I — III),[2] one count of sexual battery (Count IV),[3] and one count of touching a child for lustful purposes (Count V).[4] During the jury trial on February 5, 2013, Byers asserted several theories as to why Tiffany suffered the bruises and cuts: (1) rough play with her older sisters; (2) her mother; (3) the child’s wearing tight clothes; and (4) a Vitamin D deficiency. However, two medical experts testified that it was very unlikely Tiffany’s injuries were accidental or that a child could incur that type of injury by getting her foot stuck in a crib. Anna stated that Tiffany had fallen out of bed previously, but had never sustained more than a small bruise. Tiffany, who was four years old at trial, also testified, but she could not remember what had happened to her leg and was generally unresponsive to questioning. The forensic interviewer, Kristian Clark, however, said that Tiffany had told her more than once that Byers had hurt her leg. Anna also noted that Tiffany rarely said Byers’s name and that Tiffany referred to Byers as the “bad man.”
¶ 5. At the close of the State’s case, the trial court sustained Byers’s motion for a directed verdict as to Count IV. Byers was convicted on Counts I and III and was sentenced to forty years in the custody of the MDOC on each count, with the sentences to run concurrently.[5] Byers filed a motion for a judgment notwithstanding the verdict, or in the alternative, a new trial, which the circuit court denied.
DISCUSSION
I. Whether the admission of Tiffany’s taped forensic interview violated Byers’s constitutional right to confront witnesses.
¶ 6. A video of Tiffany’s forensic interview conducted by Clark was admitted at trial. Byers claims that the admission of this evidence violated his right to confront witnesses under the Sixth Amendment of the United States Constitution. “In all criminal prosecutions, the accused shall enjoy the right to be confronted with the witnesses against him.” Penny v. State, 960 So.2d 533, 537 (¶ 10) (Miss.Ct.App.2006) (citing U.S. Const. amend VI; Miss. Const. art. 3, § 26). “This right applies to in-court testimony as well as out-of-court statements.” Id. (citing Crawford v. Washington, 541 U.S. 36, 50-51, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004)).
¶ 7. However, there was no objection to the admission of this video into evidence. In fact, Byers’s counsel requested that the video be shown to the jury, stating: “There is a forensic video of this child where she spoke to the interviewer, and I believe that would be a much better vehicle for this jury to see what this child has to say.” “The constitutional right of confrontation, like other constitutional rights, is forfeited if it is not asserted at the trial level.” Mingo v. State, 944 So.2d 18, 28 (¶ 23) (Miss.2006) (citations omitted). Therefore, Byers’s failure to make a contemporaneous objection bars this issue from appellate review.
*102 ¶ 8. Notwithstanding the procedural bar, both participants in the video interview, Clark and Tiffany, testified at trial. Although defense counsel declined to question these witnesses, they were available to the defense for cross-examination.[6] See Penny, 960 So.2d at 537 (¶ 11) (finding no violation of defendant’s right to confrontation, as the witness from the video evidence was available at trial for cross-examination). Accordingly, we find no violation of Byers’s right to confront the witnesses in this instance. This issue is without merit.
II. Ineffective Assistance of Counsel
¶ 9. Byers argues that his counsel’s performance was ineffective due to his failure to object the admission of the video evidence, which Byers contends contained inadmissible, hearsay statements by Tiffany. “To prove ineffective assistance of counsel, a defendant must show that: (1) counsel’s performance was deficient, and (2) this deficiency prejudiced the defendant.” Cherry v. State, 24 So.3d 1048, 1051 (¶ 6) (Miss.Ct.App.2010) (citing Strickland v. Washington, 466 U.S. 668, 687,104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)).
¶ 10. As previously noted, it seems apparent that defense counsel’s trial strategy was to show the video to the jury. According to the State, the video aided Byers’s defense because, in the video, Tiffany denied any touching as it related to Counts IV and V. Byers obtained a directed verdict as to Count IV and was acquitted as to Count V. “With respect to the overall performance of the attorney, counsel’s choices of whether or not to file certain motions, call witnesses, ask certain questions, or make certain objections fall within the ambit of trial strategy and cannot give rise to an ineffective assistance of counsel claim.” McDonald v. State, 130 So.3d 102, 112 (¶ 34) (Miss.Ct.App.2013) (quoting Powell v. State, 806 So.2d 1069, 1077 (¶ 18) (Miss.2001)).
III. Whether the State failed to provide sufficient evidence to support the conviction for Count III.
¶ 11. In Count III, Byers was convicted of felony child abuse by causing “serious bodily harm, to wit: severe bruising, abrasions and lacerations” to Tiffany. At the time the offense occurred, Mississippi Code Annotated section 97-5-39(2) (Rev.2006 & Supp.2011) provided:
Any person who shall intentionally (i) burn any child, (ii) torture any child or, (iii) except in self-defense or in order to prevent bodily harm to a third party, whip, strike or otherwise abuse or mutilate any child in such a manner as to cause serious bodily harm, shall be guilty of felonious abuse of a child and, upon conviction, shall be sentenced to imprisonment in the custody of the Department of Corrections for life or such lesser term of imprisonment as the court may determine, but not less than ten (10) years. For any second or subsequent conviction under this subsection, the person shall be sentenced to imprisonment for life.
(Emphasis added). This statute was amended in July 2013, a few months after Byers’s trial, to include definitions for “bodily injury” and “serious bodily injury.” The current statute defines “serious bodily harm” as “any serious bodily injury to a child and includes, but is not limited to, the fracture of a bone, permanent disfigurement, permanent scarring, or any inter *103 nal bleeding or internal trauma to any organ, any brain damage, any injury to the eye or ear of a child or other vital organ, and impairment of any bodily function.” Miss.Code Ann. § 97-5-B9(2)(f) (Supp.2013).
¶ 12. Byers submits that Tiffany’s injuries in Count III did not constitute serious bodily harm under the statute. Therefore, he argues that his conviction for Count III should be reversed and remanded for re-sentencing for misdemeanor child abuse.
¶ 13. However, we must apply the statute as it existed when the offense occurred. Prior to the amendment, the Mississippi Supreme Court defined serious bodily harm as “bodily injury which creates a substantial risk of death, or permanent or temporary disfigurement, or impairment of any function of any bodily organ or function[.]” Buffington v. State, 824 So.2d 576, 580 (¶ 15) (Miss.2002).[7] In Baker v. State, 70 So.3d 235, 240 (¶ 19) (Miss.Ct.App.2011), this Court held that evidence of “significant bruising and swelling” of a child’s face, coupled with testimony “that only multiple blows using great force could have caused [the] injuries,” was sufficient evidence to find that the defendant inflicted seriously bodily harm to the child.
¶ 14. In the present case, while viewing photographic evidence of Tiffany’s injuries, the emergency-room nurse at Garden Park testified that Tiffany “had abrasions and bruising to her neck, over here under her eye and her forehead, cheek, neck, ... [and] her little belly.” Dr. Karen Parsell, who examined Tiffany at USA Hospital, testified:
She had bruising of different stages. She had what looked to be petechia, which are small capillary breaks up underneath the skin, and she had significant bruising on her bottom area and around her thighs. She also had a small abrasion up near her chest and neck area.
[[Image here]]
You see the bruising and redness around her face area, and then these marks here on her neck are significant. Again, those are petechia and bruising, which could be from a constriction-type mechanism, a very forceful injury as well.
When asked what could have made these types of marks on the child, Dr. Parsell replied: “It would have to be something very hard like a very hard slap or something with blunt force such as a paddle or piece of wood[.]” Pictures of Tiffany’s injuries were also presented to the jury.
¶ 15. Accordingly, we find there was sufficient evidence presented at trial that Byers inflicted seriously bodily injury to Tiffany as set forth in Count III.
IV. Whether Byers was subjected to double jeopardy.
¶ 16. Byers claims that the conduct in Count III merged with the conduct in Count I; therefore, he was subjected to double jeopardy. Mississippi analyzes double-jeopardy claims using the test established in Blockburger v. United States, 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932), which “instructs courts to determine whether each offense contains an element not present in the other; if not, they are labeled the same offense, for double-jeopardy purposes.” Kelly v. State, 80 So.3d 802, 805 (¶ 11) (Miss.2012). “The rule plainly states that ‘where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.’ ” Id. (quot *104 ing Blockburger 284 U.S. at 304, 52 S.Ct.180). “In considering whether a single act constitutes more than one offense, we consider the charges as indicted, not the underlying facts.” Rowland v. State, 98 So.3d 1032, 1038 (¶ 11) (Miss.2012) (citing Culp v. State, 933 So.2d 264, 281 (¶ 58) (Miss.2005)).
¶ 17. Byers was indicted under section 97-5-39(2) on both counts. Therefore, the statutory elements were the same. In the indictment, Count I charged that Byers “did willfully, unlawfully, feloniously, and intentionally, whip, strike or otherwise abuse or mutilate [Tiffany], a child the age of two (2) years old at the time in question, in such a manner as to cause serious bodily harm, to-wit: a fracture to the right leg of [Tiffany.]” (Emphasis added). As already discussed, Count III concerned the bruises and lacerations found on Tiffany. Thus, the types of injuries constituting the abuse in the two counts are different: Count I concerns the leg fracture; Count III concerns the bruises and abrasions.
¶ 18. “Even though there may be a substantial overlap in the proof supporting the convictions of the different crimes, the Bloclcburger test is met where each offense requires proof of an element not necessary to the other.” Nelson v. State, 10 So.3d 898, 907 (¶ 37) (Miss.2009) (quoting Holly v. State, 671 So.2d 32, 44 (Miss.1996)). Count III required “proof of a fact” not found in Count I; namely, that Tiffany suffered serious bodily harm in the form of “severe bruising, abrasions, and lacerations.”
¶ 19. Furthermore, the indictment and jury instructions distinguish the two counts by the dates of the occurrences. As to Count I, the dates are between September 3, 2011, and September 4, 2011. Count III listed the dates as “[o]n or between August 1, 2011[,] and September 4, 2011[.]”[8] We find Byers’s claim is without merit.
¶ 20. THE JUDGMENT OF THE HARRISON COUNTY CIRCUIT COURT OF CONVICTION OF TWO COUNTS OF FELONY CHILD ABUSE AND SENTENCES OF FORTY YEARS ON EACH COUNT, WITH THE SENTENCES TO RUN CONCURRENTLY IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HARRISON COUNTY.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., ISHEE, CARLTON, MAXWELL, FAIR AND JAMES, JJ., CONCUR. ROBERTS, J„ CONCURS IN PART AND IN THE RESULT.

. As this appeal involves allegations of child abuse, the names of the victim and her family have been changed to protect her identity.

. See Miss.Code Ann. § 97-5-39(2) (Rev.2006).

. See Miss.Code Ann. § 97-3-95(1)(d) (Rev.2006).

. See Miss.Code Ann. § 97-5-23(1) (Rev.2006).

.Byers was acquitted of the charge in Count V. It was noted during the motion for directed, verdict that Count II had been passed to the files by the State.

. We acknowledge that the record reflects that Tiffany was not very responsive to direct questioning regarding the incident; however, the circuit judge found her to be competent under Mississippi Rule of Evidence 601.

. This language is identical to that in Jury Instruction 8, which was given to the jury.

. Dr. Parsell testified that the bruises appeared to be in various stages of healing and that some of the injuries appeared to be new.
[The State]: And with the different, the red and the purple markings, does that indicate to you whether it’s a new injury or an old injury?
[Dr. Parsell]: Well, those would be more consistent with a new injury. And then with the different degrees, that would be repeated injuries. That wouldn't just be from, say, one type of forceful injury. That would be from repeated hits within the same time.
[The State]: Could you say how recent, based on the degree of redness and bruising, how recent these injuries would have occurred?
[Dr. Parsell]: Within 48 hours for the new areas. Some of the older areas could have been up to a week, but the reddish and purple areas within 48 hours.
Anna also stated that she saw no marks on Tiffany the night before the incident. However, the jury instruction only required that the jury find the injuries in Count III occurred between August 1, 2011, and September 4, 2011. There was sufficient evidence to support this finding.